720 So.2d 6 (1998)
Lucydalva WIJNGAARDE, Individually and on Behalf of Her Minor Child, Cristiane Wijngaarde
v.
The PARENTS OF Kenya GUY, The Parents of Sylvester Snow, Orleans Parish School Board, Unknown Bus Driver and Transit Management of Southeast Louisiana, Inc.
No. 97-CA-2064.
Court of Appeal of Louisiana, Fourth Circuit.
September 2, 1998.
Rehearing Denied November 19, 1998.
*7 Cheryl A. Gray, Elie, Jones & Gray, New Orleans, for Appellees.
Clare Jupiter, Donesia D. Turner, New Orleans, for Defendant/Appellant Orleans Parish School Board.
Ranord J. Darensburg, New Orleans, for Defendants/Appellants Reginal Transit Authority and Transit Management of Southeast Louisiana, Inc.
Before ARMSTRONG, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
The Orleans Parish School Board, as well as Regional Transit Authority and Transit Management of Southeast Louisiana, Inc. (RTA), have appealed a judgment of the district court finding them liable for injuries sustained by plaintiff's daughter, Cristiane Wijngaarde, when she was hit in the face by a fellow student.
Cristiane was a sixteen-year-old student at Marion Abramson High School. On March 7, 1994, she suffered a fractured jaw after a fellow student, Kenya Guy, punched her in the face immediately after she alighted from a RTA bus. This attack was the culmination of several confrontations, on and off campus, which had occurred that day between Kenya and his friend, Sylvester Snow, on one side, and Cristiane and her friend, Chasity Phillips, on the other side.
Plaintiff, Lucydalva Wijngaarde, sued the parents of Kenya Guy and Sylvester Snow, *8 the School Board, and RTA. Plaintiff alleged that School Board employees were negligent in failing to keep Cristiane and Kenya separate after breaking up a conflict between these students near the end of the school day. Plaintiff further alleged that an unidentified RTA bus driver ordered Cristiane and Kenya to exit a public bus, despite Cristiane's plea that Kenya was threatening her. Both RTA and the School Board filed crossclaims against the parents of Kenya and Sylvester, requesting indemnification.
After a bench trial, the district court entered judgment in favor of the plaintiff for $126,557.10, and against the School Board and RTA, allocating twenty percent of the fault to the School Board and eighty percent of the fault to RTA. The damage award included an award of $10,000.00 for the pain and suffering of plaintiff, Cristiane's mother. Finding that Kenya was liable for intentionally injuring Cristiane, the judge granted the School Board's and RTA's cross-claims for indemnification. The judge also found that Sylvester Snow was not liable for Cristiane's injury and that Cristiane was free from fault in causing her own injury.
The consensus of the testimony at trial indicates the following incidents took place at or near Abramson High School on March 7, 1994. Chasity Phillips and Kenya Guy had a verbal altercation near the school auditorium at some point during the school day. Afterwards, a very upset Chasity encountered Cristiane in a restroom and told her what had happened. Near the end of the school day, Chasity and Kenya again had a verbal altercation in front of a church next to the school. Cristiane approached them and joined in with Chasity in making derogatory comments to Kenya, as he was doing to them.
Pauline Joseph, a school security counselor, approached the group and had more difficulty quieting the girls down than she did Kenya. She then took the two girls to the school office and had them write statements about the incident.[1] Another school employee, Mr. White, brought Kenya and Sylvester to the office. The record indicates that the girls and the boys had little or no contact in the office. Kenya apparently attended detention after school that day because of another incident in which he was involved.
Chasity and Cristiane left the office separately to go home for the day. Cristiane went to the bus stop near school, spoke to her boyfriend there, and then boarded the first bus that arrived. Kenya and Sylvester happened to board the same bus as Cristiane, and shortly thereafter got into yet another verbal altercation with her. The record indicates, and there is no dispute, that Cristiane was heavier and taller than Kenya at the time.
While on the bus, DeShawn Price, a friend of Cristiane, offered Cristiane a ride home if she wanted to leave the bus with DeShawn at a stop sooner than Cristiane's normal stop. Cristiane declined. After the bus driver, who was never identified, made several requests for the students to quiet down, he went to the rear of the bus and threatened to call his supervisor or the police. At this point, the boys claim to have chosen to exit the bus rather than confront any authorities, and Cristiane claims to have been forced to exit the bus by the driver. As soon as Cristiane stepped off the bus, Kenya hit her in the face, knocking her to the ground. She was helped back onto the bus, exited at her normal stop, and went home.
Once home, Cristiane did not inform her mother of her injury. Cristiane's boyfriend called her, became alarmed, went to pick her up, and brought her to his home. His mother called Cristiane's mother and informed her that Cristiane was injured. Cristiane's parents then brought Cristiane to the police station where they were told to get medical attention for her. Cristiane's parents impatiently brought her to several emergency rooms until she was eventually diagnosed at St. Charles General as having a broken jaw. A few days later she underwent surgery, from which she spent several months recovering.
At the time of trial, Kenya was in jail for, among other things, the battery he committed upon Cristiane.
*9 After trial, in oral reasons for her decision, the trial judge found that an argument/altercation occurred near the school, that Cristiane attempted to protect her friend and was accosted by Kenya, and that Cristiane intended to protect herself by pushing Kenya. The judge also found that, although Ms. Joseph had taken Cristiane's statement in the office, she neither gave that statement to an administrator nor advised an administrator of the incident so that appropriate action could be taken. Finding that Cristiane was in the school office until 3:00 to 3:10, the judge concluded that the school allowed an insufficient amount of time for Cristiane to leave school to prevent, we presume, another encounter between Kenya and Cristiane.
The testimony of both Cristiane and Kenya led the trial judge to conclude that Kenya stood directly over Cristiane on the bus, which prevented her from trying to leave the bus. According to the judge, by ordering Cristiane off of the bus, RTA violated a duty it had to return all fare-paying passengers to their destination safely and had the last opportunity to prevent the incident.
As to any fault by Cristiane, the trial judge stated:
[It is] this Court's belief ... that the plaintiff is free of fault in this incident. The Court does not believe that words are sufficient provocation for the striking of [Cristiane] by [Kenya], therefore the Court is not assigning any fault to her in this incident.
The judge also found that Sylvester Snow was not liable to plaintiff. As to Kenya's fault, which the judge announced before trial would be evaluated at trial, the judge determined:
Kenya Guy is liable for the striking of Cristiane Wijngaarde. I don't know what else we need to say about that. The Court's decision [is] that this was an intentional tort by Kenya Guy upon Cristiane.....[2]
The School Board assigns error to the trial judge's finding it liable for Cristiane's injury, to her finding Cristiane free from fault, and to her awarding damages to Cristiane's mother. RTA also urges error in the award of damages to Cristiane's mother, as well as assigning error to the judge's finding it liable for Cristiane's injury, arguing that the judge applied the wrong standard of proof with regard to its negligence. The parties do not question the amount of damages awarded for Cristiane's injury.
Before we can review the fault assessments against the School Board and RTA, we must correct an error of law made by the trial judge. For reasons which are not clear in the record, the trial judge, as noted above, first determined that Kenya's fault would be evaluated at trial, but then, presumably finding Kenya responsible for an intentional tort, the trial judge failed to quantify Kenya's fault or compare it with that of the other defendants.[3]
La. Civ.Code art. 2323, amended by Act 3 of the 1996 Extraordinary Legislative Session, approved on April 16, 1996, provides:
A. In any action for damages where a person suffers injury, death, or loss, the *10 degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

* * * * * *
La. Civ.Code art. 2324 was also amended by Act 3 to effectively end solidary liability for negligent acts.
In Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180, 183, the Supreme Court concluded that the legislative changes reflected in Act 3 are procedural and can be applied retroactively.
In the instant case, the trial judge erred in failing to quantify the fault of all parties, including Kenya, as required by article 2323 as amended.[4] In the interests of judicial economy and because the record is complete, we will determine the proper fault assessments instead of remanding the matter.
The factors to be considered when allocating fault among tortfeasors include those set out in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985):
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
The Supreme Court prefaced these guidelines with reference to the Uniform Comparative Fault Act, 2(b), which states:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

School Board's fault:
The trial judge implicitly based the School Board's fault on a finding that the School Board breached a duty owed to Cristiane by failing to ensure that she did not go home at the same time as Kenya. While such a breach may be contemplable, it will most likely occur when a school has antagonists together and then releases them at the same time. Here, we have the fortuitous circumstances of the boys going to detention and the girls delaying their leaving school.
The School Board argues that the trial judge erred in assessing any fault to it because the actions of the School Board employees were reasonable under the circumstances. Although the employees seem to have acted reasonably, we nevertheless find that the School Board's documentation of the incidents involving these students is lacking, and the testimony of the School Board employees was rather vague and unilluminating. Hence, Cristiane's testimony that she had informed the school that Kenya had threatened her provides the basis for an imposition of liability against the School Board.
*11 However, because there is simply no evidence that the School Board consciously released these students together, and the causal relation between the School Board's failure to insure that the students would be separated and Cristiane's injury is tenuous, the proper assessment of fault to the School Board, we believe, is ten percent.

RTA's fault:
The trial judge's assessment of fault upon RTA of eighty percent was based on the finding that RTA breached a duty it owed to Cristiane to return all fare-paying passengers to their destination safely.
RTA argues that the trial judge incorrectly applied to it a higher standard of care traditionally associated with common carriers. RTA is correct in its argument that the Supreme Court in Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981), repudiated the notion that public carriers should be held to a heightened standard of care with regard to attacks committed on their vehicles. Nevertheless, in Rodriguez, the Court noted:
Merely because the defendant will not be held to the highest degree of care to prevent intentional batteries upon its passengers does not mean that the law will absolve it from liability any time a passenger is attacked. Since defendant is essentially operating a business that permits the public to enter its premises, it should be held to the same duty as a reasonable business establishment with respect to hazards not associated with the peculiar nature of carriage of passengers.
Thus, RTA has a duty to exercise reasonable care to protect its passengers. We find nothing in the record to indicate that the trial judge applied a heightened standard of care to RTA, although the duty which the trial judge did identifyto return all farepaying customers to their destination safelywas not clearly established at trial and is not found in our jurisprudence. Hence, we will consider RTA's fault assessment under the "reasonableness" standard noted above.
According to the Court in Rodriguez, the carrier's duty to exercise reasonable care extends to keeping the premises safe from unreasonable risks of harm or warning persons of known dangers. 400 So.2d at 887.
[T]he duty can be discharged by the summoning of those entrusted by law with the power of immediately maintaining the peace, the police, at the time the [carrier] knows or should reasonably know of the third person's intention and apparent ability to execute the intended acts. In addition, the [carrier] would have to, as far as is practicable under the circumstances, warn others of the danger prior to the arrival of the police so that they might take actions to avoid the danger.
Rodriguez, 400 So.2d at 887-888. (Citations omitted.)
The testimony established that the unknown bus driver repeatedly told these students to quiet down before he stopped the bus to confront the students at the rear of the bus. The testimony further indicated that the driver was presented with two equally aggressive individualsCristiane and Kenya. Two long-time RTA employees said that while company policy does not authorize a driver to remove someone from a bus, it is not against company policy for a driver to request a unruly passenger to exit the bus.
Because the driver was obviously not aware of the previous confrontations between these individuals, it is difficult to conclude that the driver should have reasonably anticipated the attack with sufficient time to have prevented it. The problem we have in this case with assessing the reasonableness of the driver's actions is that the driver was not identified. Since the record indicates that an incident did occur as Cristiane stepped off the bus, and she was helped back onto the bus and deposited at her stop, RTA should have had some record of the incident that would enable the parties at least to identify the driver.
RTA's fault, we believe, can only be based upon Cristiane's basically uncontradicted testimony that the driver required her, instead of requesting of her, to exit the bus.[5] *12 Without testimony from the driver involved, RTA failed to explain adequately why its driver required Cristiane to disembark once her antagonists, Kenya and his friend, by their own admission, chose to leave the bus. Considering all of these factors, we find that the proper assessment of fault to RTA is twenty percent.

Kenya's fault:
As noted above, we find that the trial court erred in not including Kenya's fault in the fault assessments. Although Kenya was guilty of an intentional act, this is an appropriate case in which to compare his fault with that of others involved. The Veazey court set forth three public policy concerns which should be considered by the trial court when determining whether to compare the fault of intentional actors and negligent actors:
... As a general rule, we find that negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent....
Second, [the negligent tortfeasor] who by definition acted unreasonably under the circumstances in breaching their duty to plaintiff, should not be allowed to benefit at the innocent plaintiff's expense by an allocation of fault to the intentional tortfeasor under comparative fault principles. Given the fact that any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor, application of comparative fault principles in the circumstances presented in this particular case would operate to reduce the incentive of the lessor to protect against the same type of situation occurring again in the future. Such a result is clearly contrary to public policy.
Third, ... [b]ecause we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.
Veazey, 650 So.2d at 719.
Although we have concluded that the scope of duty owed to Cristiane by RTA and the School Board may encompass the risk that she would become the victim of a violent criminal act, a comparison of fault between the School Board, RTA, and Kenya would not reduce the incentive of the School Board and RTA to protect against a similar type of incident in the future. Rather, there is every reason to believe that the School Board and RTA, both of which exist to serve the public, would continue to implement and maintain security measures to protect students or passengers from a wide range of potential harm. Finally, unlike Veazey, this simply is not a case where a true comparison is impossible. Cristiane's injury was a culmination of incidents throughout the day, and it is apparent to us that a variety of factors, some due to negligence, some fortuitous, and some intentional, worked together or in sequence to cause her injury.
Hence, Kenya's fault should have been assessed and compared to that of the other parties. Furthermore, we believe that the proper assessment of fault for Kenya is sixty percent.

Cristiane's fault:
The trial court assigned no comparative negligence to Cristiane. The School Board contests this decision, arguing that sixteen-year-old Cristiane's own recklessness during the day contributed to her injury. We find that the trial judge was manifestly erroneous in failing to assign any comparative fault to Cristiane. Courts have recognized that there may be certain conduct which, while not justifying the battery complained of, may be of such a nature under the circumstances to have provoked or contributed to the incident. See Babb v. Boney, 30,443 (La.App. 2nd Cir. 4/8/98), 710 So.2d 1132. Comparative fault principles based on the facts and circumstances of the case, along with the Watson guidelines should be applied to evaluate *13 victim fault in this regard. Jones v. Thomas, 557 So.2d 1015 (La.App. 4th Cir.1990).
In this case, the evidence supports the School Board's argument that Cristiane failed to take even minimal precautions to avoid the physical violence she claims Kenya threatened. Cristiane admitted that, at various times, she called Kenya a little boy, a coward, and a whore because he wanted to fight a girl. Furthermore, Cristiane was at least as aggressive as Kenya in each verbal altercation, she also delayed in going home after she left the school office, and she declined her friend's offer to exit the bus sooner and to be brought home. Under the circumstances, we believe that Cristiane's fault should have been assessed at ten percent.
Nevertheless, La. Civ.Code art. 2323(C) prevents the reduction of Cristiane's recovery of damages due to her own fault when an intentional tortfeasor, like Kenya, is also assessed fault.[6] Recognizing the ambiguity in the last phrase of article 2323(C), we believe that the most reasonable way to interpret this provision is to require the intentional tortfeasor to absorb the negligent plaintiff's fault. For a discussion of the problem, see Frank L. Maraist & Thomas C. Galligan, Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L.Rev. 339, 405 n. 323 (1996). Thus, in this case, the intentional tortfeasor, Kenya, would be liable for seventy percent of the damages, based on his fault assessment as well as Cristiane's.[7]
Finally, both the School Board and RTA argue that the trial judge erred in awarding $10,000.00 to the plaintiff, Cristiane's mother. Because the trial judge assessed damages "for the mother's pain and suffering," the School Board and RTA argue that the trial judge gave the mother an award for loss of consortium, for which there is no supporting evidence in the record. We agree. Cristiane's mother, on the other hand, argues that the trial judge really intended to give her Lejeune damages.[8] Even assuming that the trial judge was awarding Lejeune damages, we find scant evidence in this record which would support such an award. Hence, the trial judge was manifestly erroneous in awarding damages to plaintiff.
The Supreme Court's recent decision in Aucoin v. State, Department of Transportation and Development, 97-1967 (La.4/24/98), 1998 WL 205320, 712 So.2d 62, causes the judgment we render in this case to be awkward. In Aucoin, the Court determined that the shift from solidary liability to joint and several liability occasioned by Act 3's change to La. Civ.Code art. 2324, was a substantive change which could only be applied prospectively. Hence, in this case, since Cristiane's injury occurred prior to the amendment to article 2324, the School Board, RTA and Kenya are liable in solido.[9] Considering new article 2323(C), which is applied retroactively according to Keith, supra, Kenya alone is also liable for Cristiane's ten percent of fault.
Accordingly, the judgment of the trial court is affirmed in part and reversed in part. Those portions of the judgment finding Cristiane free from fault and awarding damages for injury to Cristiane's mother are reversed. The judgment is affirmed in the amount of $116,557.10, plus costs. Judgment *14 is hereby rendered in solido against the School Board for ten percent, RTA for twenty percent, and Kenya for sixty percent of the total damages. Judgment is further rendered against Kenya, alone, for an additional ten percent of the total damages.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Only two statements written by Chasity, one of which is incomplete, are in the record.
[2] Before trial, plaintiff's claim against Kenya's mother was severed, apparently because of difficulties serving her. As trial began, the judge agreed that she would try Kenya's fault but not his mother's responsibility. At the end of trial, the judge granted the School Board's and RTA's cross-claims for indemnity against Mrs. Guy. The School Board and RTA then proceeded to take default judgments against Mrs. Guy.
[3] The trial judge perhaps relied upon Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712, 720, in which a very divided Supreme Court held:

... while Louisiana law is broad enough to allow comparison of fault between intentional tortfeasors and negligent tortfeasors, determination of whether such a comparison should be made must be determined by the trial court on a case by case basis, bearing in mind the public policy concerns discussed herein.
Veazey involved a tenant raped in an apartment complex. Assuring the tenant that it provided security and that the area was safe, the landlord failed to disclose numerous reports of crime and to provide adequate security. The Court concluded that, under those circumstances and in light of certain public policy considerations, it was inappropriate to compare the intentional fault of the rapist with the negligence of the landlord. The instant case, however, as we will discuss, is an appropriate case in which to compare the fault of intentional and negligent tortfeasors.
[4] The trial judge did not have the benefit of the Supreme Court's guidance in Keith, because her decision was rendered two weeks before Keith was decided.
[5] Kenya and/or Sylvester testified that the driver did tell them to get off the bus, that it was likely that Cristiane told the driver it was not her stop, and that Cristiane did tell the driver that he and his friend were "messing with her."
[6] La. Civ.Code art. 2323(C) provides:

Notwithstanding the provisions of Paragraph A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
[7] The default judgments rendered against Mrs. Guy, Kenya's mother, in favor of the School Board and RTA were not appealed and are therefore not before us. Hence, we decline to discuss the appropriateness and/or effect of these judgments.
[8] Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
[9] Prior to the 1996 amendment, La. Civ.Code art. 2324 provided in part:

... liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages ...