**William J. McAVEY**

v.

**Chen–Horng LEE et al.**

No. Civ.A. 96–1192.

United States District Court,
E.D. Louisiana.

Oct. 30, 1998.

John J. Cummings, III, Cummings, Cummings & Dudenhefer, Richard Massie Martin, Jr., Richard M. Martin, Jr., New Orleans, LA, for Plaintiff.

Thomas Glenn Buck, Blue, Williams, LLP, William Wesley Shaw, Jr., William W. Shaw, Jr., Metairie, LA, for Defendants.

### ORDER AND REASONS

LEMMON, District Judge.

IT IS ORDERED that First Financial Insurance Company's "Motion for New Trial and Motion for Judgment as a Matter of Law," pursuant to Fed.R.Civ.P. 50(b) and 59, are DENIED. Document # 94.

In its motion for a New Trial and Judgment as a Matter of Law, First Financial Insurance Company (First Financial), the insurer of the Tomfort Lodge, argues that the Court should have instructed the jury to quantify the fault of the intentional tortfeasors.

Wiliam J. McAvey, a long-distance moving van operator, checked into the Tomfort Lodge, owned by Chen–Horng Lee and Chin–Li Chen, during an overnight stay in New Orleans, Louisiana, on November 6, 1995. At approximately 11:00 p.m., a man knocked on the door of his room and announced "hotel security." McAvey opened the door because he was concerned about his moving customer's goods in his truck in the parking lot. Two unidentified men attacked him, and one of the men fled with his wallet. As McAvey pursued the assailant with the wallet down the motel stairwell, the other assailant struck him from behind. McAvey fell or was pushed down the stairs and incurred an injury which prevented him from continuing his occupation as a moving van operator.

First Financial asserts that the Court erred in following *Veazey v. Elmwood Plantation Assoc. Ltd.*, 650 So.2d 712 (La. 1994), and therefore refusing to instruct the jury to apportion fault of the intentional tortfeasor as well as the innkeeper and the plaintiff. First Financial argues that the amendments to La. Civ.Code art. 2323 overruled *Veazey* and now require that the fault of all tortfeasors be submitted to the jury.

In 1996, the legislature amended Louisiana comparative fault law and, *inter alia*, revised the substance and procedure to require the allocation of fault to nonparties. The amended version of art. 2323 provides:

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A. shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly

of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

In *Veazey,* a case decided before the amendment to article 2323, an intruder entered Veazey's second-story, leased apartment and raped her. The Supreme Court of Louisiana addressed the questions "whether Louisiana comparative fault principles can and, if so, should apply when the fault of both an intentional tortfeasor and a negligent tortfeasor contributes to the same damages." 650 So.2d at 715. The Supreme Court held that it was not error for the trial court to refuse to submit an interrogatory to the jury for an apportionment of the apartment complex's and the rapist's respective fault. *Id.* at 720. Under *Veazey,* when a tort victim's damages are caused by the concurrent fault of an intentional tortfeasor and a negligent tortfeasor, the factfinder does not allocate fault between the two. *Id.*

The court reasoned "that comparative fault law as it exists in Louisiana is broad enough in an appropriate factual setting to encompass the comparison of negligent and intentional torts." *Id.* at 718. The inquiry did not end with the conclusion that such a comparison *could* be made. *Id.* The more difficult question was "whether such a comparison *should* be made in general and, more specifically, whether a comparison *should* be made in this particular case." *Id.* The *Veazey* court set forth three public policy concerns to be considered in the trial court's determination whether to compare the fault of intentional tortfeasors and negligent tortfeasors:

> First, and foremost, the scope of Southmark's duty to the plaintiff in this case clearly encompassed the exact risk of the occurrence which caused damage to plaintiff. As a general rule, we find that negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent. . . .

Second, [the negligent tortfeasor] who by definition acted unreasonably under the circumstances in breaching their duty to plaintiff, should not be allowed to benefit at the innocent plaintiff's expense by an allocation of fault to the intentional tortfeasor under comparative fault principles. Given the fact that any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor, application of comparative fault principles in the circumstances presented in this particular case would operate to reduce the incentive of the lessor to protect against the same type of situation occurring again in the future. Such a result is clearly contrary to public policy.

Third, . . . [b]ecause we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.

*Veazey,* 650 So.2d at 719.

The court determined that a case-by-case analysis should be employed by the courts in determining whether to apply comparative fault in cases "where it is alleged that comparative fault exists among intentional tortfeasors and negligent tortfeasors." *Id.* at 719. Public policy requires that the courts inquire whether the application of comparative fault principles in a particular case would operate to reduce the incentive of the duty-bound negligent tortfeasor from protecting against the particular risk in the future. *Id.*

Although no Louisiana case squarely addresses whether the 1996 amendments overruled *Veazey,* some scholars have assumed that, under new article 2323(A) and new Code of Civil Procedure article 1812(C)(2)(b)(ii), fault would have to be allocated to the phantom, *see* Frank L. Maraist and Thomas C. Galligan, *Burying*

*Caesar: Civil Justice Reform and the Changing Face of Tort Law,* 71 Tul. L.Rev. 339 (1996), and they suggest that a comparison of relative duties could "avoid undermining the deterrent effect of certain duties via the allocation of fault to the very persons against whose fault the defendant had a duty to guard." Professors Maraist and Galligan suggest that in post *Veazey-*type cases, factfinders would be reminded that

> the reason for placing the duty upon the lessor was to avoid the very risk that occurred. Lawyers should be allowed to argue the point. They should be able to stress that even if the lessor did not commit the rape, it set the stage for the event and an allocation of little or no fault to the lessor would undermine the deterrent effect of imposing the duty.... [T]he role of the jury in narrowing or expending the duty will be much more significant as it engages in a comparison of the relevant duties.

First Financial cites *Wijngaarde v. Parents of Guy,* 720 So.2d 6 (La.App.1998), in support of its argument that *Veazey* should not apply in this case. In *Wijngaarde,* a high school student suffered a fractured jaw after a fellow student punched her in the face immediately after she stepped down from a RTA bus. *Id.* at 7. The Fourth Circuit Court of Appeal held that it was an appropriate case in which to compare the fault of an intentional tortfeasors with that of negligent tortfeasors because the comparison of fault "would not reduce the incentive of the School Board and RTA to protect against a similar type of incident in the future." *Id.* at 12. The court of appeal relied on the public policy concerns enunciated in *Veazey* to determine whether to compare the fault of intentional actors and negligent actors, *id.* at 12, and distinguished the case from *Veazey,* stating that, although it was inappropriate in *Veazey* to compare the intentional fault of the rapist with the negligence of the landlord, that *Wijngaarde,*

was a case which required such a comparison.[1] *Id.* at 9 n. 3.

In 1996, the Louisiana legislature amended articles 2323 and 2324 pertaining to comparative fault. Article 2323 governs the consideration of the fault of the tortfeasor(s) and the contributory negligence of the tort victim, while article 2324 governs the allocation of fault and the resulting liability of two or more tortfeasors.

Article 2323, prior to the 1996 amendment, merely provided that the negligence of a person who suffers damages does not defeat the damaged person's recovery. The 1996 amendment divided article 2323 into three paragraphs. Paragraph A repeated the comparative fault pronouncement of the prior version of the article, but added a provision that the percentage of fault of all persons contributing to the loss shall be determined "regardless of whether the person is a party to the action or a non-party, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable."

Significantly, Paragraph C added an exception to the general rule of comparative fault when an intentional tortfeasor was involved, providing that the tort victim's "claim for recovery of damages shall not be reduced."

Article 2324, as enacted in the 1979 legislation adopting comparative fault, provided generally for solidary liability among joint tortfeasors, with one exception. When the tort victim's percentage of negligence was greater than the degree of fault of one of several tortfeasors, that tortfeasor's liability was not solidary, but was limited to his percentage of fault.

The 1987 version divided article 2324 into two paragraphs. Paragraph A addressed intentional tortfeasors for the first time, providing (as it does today) that an intentional tortfeasor is liable for one hun-

---

**1.** *Wijngaarde* is a pre–1996 amendment case, although it was decided after the amendment.

dred percent of the tort victim's damages. Paragraph B provided that the solidary liability of other tortfeasors was limited to fifty percent (although the tortfeasor's joint liability could be greater if his percentage of fault was more than fifty percent), except when the tort victim's percentage of negligence was greater than that tortfeasor's percentage of fault, in which case that tortfeasor's liability was limited to his percentage of fault. The amendment further provided that, except for intentional tortfeasors and for solidary liability limited to fifty percent, a tortfeasor was not solidarily liable with any "other person ... regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise."

The Supreme Court of Louisiana, in *Cavalier v. Cain's Hydrostatic Testing, Inc.*, 657 So.2d 975 (La.1995), interpreted article 2324 to include named defendants and tortfeasors released through compromise, but not to include unnamed tortfeasors (including the employer of the tort victim). Thereafter, the legislature in 1996 amended article 2324 to abolish solidary liability for any negligent tortfeasor,[2] but retained solidary liability for an intentional tortfeasor.

The issue presently before this Court is whether the legislature intended to overrule *Veazey* as well as *Cavalier*. The legislative intent to overrule *Cavalier* could not be more evident. However, there are several factors that militate against a conclusion of any intent to overrule *Veazey*.

First, the 1996 amendment to article 2323 provided for the first time a distinction in the treatment of an intentional tortfeasor and a negligent tortfeasor, disallowing any reduction in the tort victim's recovery for his contributory negligence against an intentional tortfeasor. Second, the 1996 amendment to article 2324, while completely writing out the law of solidary liability among all negligent tortfeasor, left in place the provision of paragraph A that

an intentional tortfeasor was solidarily liable for all of the tort victim's damage.

Thus, not only did the 1996 legislature fail to eliminate different treatments for intentional tortfeasors with regard to solidary liability, but also the legislature added another distinction between the treatment of intentional tortfeasors and the treatment of negligent tortfeasors with respect to the contributory negligence of the tort victim. Moreover, in expressing in minute detail the "other persons" with whom a joint tortfeasor is no longer solidarily liable, the legislature did not mention intentional tortfeasors, although intentional tortfeasors are expressly included in other paragraphs of both article 2323 and article 2324.

■ The Court concludes that the legislature did not intend to change the result of the *Veazey* decision that the fault of intentional tortfeasors generally is not to be quantified along with the fault of negligent tortfeasors, who are no longer solidarily liable with each other. While article 2323 and article 2324 could be read broadly to overrule *Veazey*, there is no indication of legislative intent to do so. Indeed, the 1996 legislature focused exclusively on the *Cavalier* decision and incorporated some of the wording of that decision to rule out the solidarity of any imaginable tortfeasor who was jointly negligent. The legislature demonstrated its ability to use specific language for overruling court decisions with which it disagreed, but made no effort to address any dissatisfaction with the *Veazey* decision.

■ In the present case, the innkeeper owed his guest a duty of care higher than ordinary or reasonable care. An innkeeper may be liable if he fails to exercise reasonable care to provide adequate security to deter the type of criminal activity which results in a guest's injury. Therefore, the conduct of the McAvey's assailants was within the ambit of protection encompassed by the duty owed to a guest

2. The amendment substantially repeated the     "regardless ..." language of article 2323.

by the innkeeper. It is inappropriate, under the mandate of *Veazey*, to quantify the fault of the intentional tortfeasor who entered the premises because of the breach of the innkeeper's duty to exercise reasonable care to provide adequate security.

■ The legal issue for the trial judge is whether the conduct of the intentional tortfeasor is within the ambit of protection encompassed by the duty owed by the negligent tortfeasor. This issue must be decided on a case by case basis by the trial judge. If the intentional tortfeasor's conduct is within the ambit of protection encompassed by the duty owed by the negligent tortfeasor, it is inappropriate to instruct the jury to quantify the fault of the intentional tortfeasor. Only in an appropriate case, i.e. when the conduct of the intentional tortfeasor is outside the ambit of protection encompassed by the duty owed by the negligent tortfeasor, should the jury be instructed to quantify the fault of the intentional tortfeasor.

The holding of *Veazey* remains viable despite the 1996 amendment:

> Though [the Supreme Court of Louisiana] did not rest its analysis squarely on a duty-risk basis, that is essentially what the majority did in deciding in *Veazey* that "comparison" of the negligence of an apartment owner and a rapist was not appropriate when the conduct of the rapist was within the ambit of protection spread by the duty owed to a tenant by the apartment owner.

H. Alston Johnson, III, Civil Jury Instructions, 18 Louisiana Civil Law Treatise § 15.01, Comments (1998 Supp.). Accordingly, the instruction to the jury was proper, and there is no basis for a new trial.

### The remaining arguments

After reviewing the arguments and the record, the Court holds that First Financial's remaining arguments do not warrant a new trial or judgment as a matter of law. For the reasons stated at trial, the jury selection process was not tainted by the innocuous question posed by the magistrate judge, the evidence was sufficient to support a finding that the innkeeper was negligent, and the plaintiff's criminal record was inadmissable.