| | | |
|---|---|---|
| **WENDY DEAN, WIFE OF/AND ROLAND DEAN, JR.,** | * | **NO. 2021-CA-0388** |
| **INDIVIDUALLY AND ON** | * | |
| **BEHALF OF THEIR MINOR** | | **COURT OF APPEAL** |
| **SON, ROLAND DEAN, III** | * | |
| | | **FOURTH CIRCUIT** |
| **VERSUS** | * | |
| | | **STATE OF LOUISIANA** |
| **DE LA SALLE OF NEW** | * * * * * * * | |
| **ORLEANS, INC., D/B/A DE LA** | | |
| **SALLE HIGH SCHOOL, RYAN** | | |
| **MANALE, BRAD STEVERSON,** | | |
| **AND MINOR CARTER** | | |
| **CLARK, THROUGH HIS** | | |
| **PARENT, GUARDIAN &** | | |
| **TUTOR, MONICA CARTER** | | |
| **CLARK** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-05899, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge
Regina Bartholomew-Woods)

Adam Stewart Lambert
ATTORNEY AT LAW
3531 Plymouth Place
New Orleans, LA 70131

Chelsea D. Dazet
ATTORNEY AT LAW
221 E. Kirkland Street
Covington, LA 70433


        COUNSEL FOR PLAINTIFF/APPELLANT

Darrin L. Forte
Lyon H. Garrison
Colin Cisco
GARRISON YOUNT FORTE & MULCAHY, L.L.C.
909 Poydras Street
Suite 1800
New Orleans, LA 70112--4053


COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**DECEMBER 21, 2021**

*RBW*

*EAL*

*RML*

This case addresses the determination of the proper amount of supervision a school owes to its students, when the case is in a summary judgment posture. For the reasons that follow, we affirm the ruling of the trial court, affirming summary judgment in favor of Appellees, De La Salle of New Orleans, Inc., d/b/a De La Salle High School and Ryan Manale.

**FACTUAL AND PROCEDURAL BACKGROUND**

On July 1, 2014, Appellant, Roland Dean ("Roland") was attending a summer football training camp at De La Salle High School ("De La Salle"). At some point, the student-athletes were sent to the varsity locker room,[1] and the head coach, Ryan Manale, along with the assistant coaches went to the coach's room to prepare for a team meeting.

---

[1] De La Salle reportedly had separate locker rooms for middle school and high school. The locker room for the high school was referred to as the varsity locker room.

While in the varsity locker room, Roland began tossing a football with a few of the other students.[2]

Another student, Defendant, Carter Clark ("Carter") began taunting Roland by calling him names and insulting his skills. Roland ordered Carter to "shut up," and the two exchanged words.

After the verbal exchange, the two (2) boys began shoving each other. Carter then pushed Roland into an open locker. When Roland tried to exit the locker, Carter punched him in the shoulder.

Roland attempted to punch Carter back but realized he could not lift his arm. He walked out of the locker room to find Brad Steverson – an assistant coach in the eighth-grade locker room. When he could not find Mr. Steverson, he proceeded to a second locker room to relax and allow the pain to dissipate.

The team then had a meeting and Roland returned to the varsity locker room. After the meeting, Roland approached Mr. Steverson and explained what happened and informed him of his shoulder pain. Roland explained that his shoulder felt as if it was burning, and that swallowing hurt.

Mr. Steverson asked Roland to lay down and began examining the injury. He rotated the arm back and forth, yanked on the arm, and--believing the shoulder was simply dislocated--attempted to push the shoulder back into its socket four times before wrapping and icing the shoulder, then placing it in a sling. Mr. Steverson then called Roland's parents to come pick him up.

Wendy Dean ("Mrs. Dean"), Roland's mother, came to the school to pick Roland up. She spoke with Mr. Steverson who explained the shoulder was

---

[2] De La Salle had a separate locker room used by eighth graders. The varsity locker room is used exclusively by football players in the ninth grade and up.

dislocated and advised following up with Roland's primary care physician or bringing him to an emergency room. Mrs. Dean immediately transported Roland to Ochsner Hospital's Emergency Room.

The emergency room x-rays revealed Roland had a frontal dislocation of the median clavicle—a dislocated joint. He was prescribed pain medication and sent home with instructions to follow-up with his primary care physician if he was not feeling better in a week.

Roland later visited his primary care physician because he was still experiencing symptoms. An MRI was performed only on the shoulder and not the clavicle area where the pain was occurring. This MRI did not reveal any injuries.

On the advice of Mr. Steverson, the family met with another physician, Dr. Suri. Dr. Suri ordered a CAT scan and a second MRI for the "correct" area.

On August 8, 2014, more than one month after the injury, the family learned that the initial diagnosis was incorrect. The clavicle was not merely dislocated but was pushed in and dangerously close to and pressing against a major artery and blood vessels.

On September 5, 2014, Roland underwent surgery to repair the injury. By this time, scar tissue had developed which needed to be removed. Additionally, a blood vessel was torn during the surgery and needed to be repaired. Muscle from Roland's leg was used to fix the clavicle injury.

Roland received occupational and physical therapy daily for two (2) weeks after returning home from the surgery. He then continued with physical therapy for six (6) months.

Roland remains partially and permanently disabled to this day. Roland's injured shoulder gives out easily, he suffers from pain and weakness in the

3

shoulder, and has a smaller range of motion. He is unable to perform activities he used to perform with ease including weight training, helping on the family farm, and riding his four-wheeler.

On June 19, 2015, Roland, along with his parents, Wendy and Roland Dean, (collectively "Appellants"), brought suit against De La Salle, the head coach, Ryan Manale, the assistant coach, Brad Steverson, and Carter, through his parent, Monica Clark. For the purpose of this appeal, De La Salle and Ryan Manale shall collectively be referred to as "Appellees," as they are the only parties who filed the summary judgment motion that is at issue in this appeal. At trial, Appellants asserted the Appellees failed to provide adequate supervision during the training camp. The case was then stayed by Ochsner Health System pending the convening of a medical review panel. After those issues were resolved, both sides conducted discovery.

On October 11, 2017, the depositions of Roland and Mrs. Dean were taken.

On November 21, 2018, Appellees filed a motion for summary judgment, asserting the damages were neither foreseeable nor preventable. The hearing on this motion was originally set for January 11, 2019, but reset without a date at the request of Appellants to allow more time for discovery. It was rescheduled for December 18, 2020, but was not heard on that date either.[3]

On February 11, 2021, Appellants filed the affidavits of Roland, Mrs. Dean, and Cody Dean, Roland's brother, who is a De LaSalle graduate, into the record. All three (3) affidavits attested to the hostility within the locker room and the lack of supervision by the coaches.

---

[3] The record is silent regarding why the hearing was reset again.

On February 19, 2021, Appellees filed a motion to strike the affidavits asserting the affidavits were self-serving and prepared solely to defeat the motion for summary judgment.

On February 26, 2021, the trial court held a hearing on the motion for summary judgment. After considering the testimony and evidence, the trial court granted the motion for summary judgment and dismissed Appellants' claims against De La Salle and Ryan Manale, with prejudice.

On March 8, 2021, the trial court issued a written judgment finding that Appellants were unable to meet their burden of proof under La. Civ. Code Ann. art 2320, and that no genuine issue of material fact existed.

On April 30, 2021, Appellants filed a petition for devolutive appeal and the court granted the motion on May 7, 2021, setting the return date "as provided by law." This appeal timely followed.

## DISCUSSION

### *Assignments of Error*

Appellants assert the following two (2) assignments of error:

1. The trial court erred when it discounted the credibility of the three (3) sworn affidavits presented by Appellants in opposition to the motion for summary judgment, because the law does not allow a judge to make such credibility determinations at the summary judgment stage; and

2. Whether defendant De La Salle voluntarily undertook an enhanced duty to supervise the locker room is a genuinely disputed issue of material fact, which can only be decided by the trier of fact after a trial.

### *Standard of Review*

The standard of review for the issuance of a summary judgement is *de novo*. *Regions Ins., Inc. v. All. CAB Serv., LLC*, 2019-0714, p. 4 (La. App. 4 Cir. 3/4/20), 293 So. 3d 1218, 1221 (quoting *Chapital v. Harry Kelleher & Co., Inc.*, 2013-

1606, p. 5-6 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81). "'A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.'" *Guy v. Howard Hughes Corp.*, 2018-0413 (La. App. 4 Cir. 12/19/18), 262 So. 3d 327, 329 (citing *Collins v. Randall*, 2002-0209, p. 3 (La. App. 1 Cir. 12/20/02), 836 So.2d 352, 354).

In discussing Appellants' assignments of error, this Court will analyze the second assignment of error first to determine what legal duty, if any, is owed by the Appellees to the Appellants.

1. *Whether De La Salle voluntarily undertook an enhanced duty to supervise the locker room*

In the second assignment of error, Appellants assert Appellees, after being informed of the dangerous conditions in the locker room, promised to monitor the locker room. Appellants assert that whether this promise created an enhanced duty of supervision is a triable genuine issue of material fact.

Generally, a school and its teachers are liable for "damages caused by students under their supervision when the school board, the teacher, or other school authorities 'might have prevented the act which caused the damages and have not done so.'" *Wallmuth v. Rapides Par. Sch. Bd.*, 2001-1779, p. 13 (La. 4/3/02), 813 So. 2d 341, 349 (quoting La. C.C. art. 2320). Constant supervision by the school, however, is not required, or expected. *Id.* at 349-50; *Hayes v. Sheraton Operating Corp., The Sheraton, LLC*, 2016-0038, p. 5 (La. App. 4 Cir. 5/25/16), 195 So. 3d 563, 566. Before liability can be imposed upon a school board for lack of adequate supervision, a causal connection between the lack of supervision and the accident

6

must be proven. *Hayes*, 195 So. 3d at 566 (quoting *Adams v. Caddo Parish School Bd.,* 25,370 (La. App. 2 Cir. 1/19/94), 631 So. 2d 70, 73). Causation is satisfied "if it is proven that the breach of duty was the cause-in-fact of the plaintiff's injuries." *Id*.

Cases where a school or school board has been found liable involved fights that occurred after the school was warned of an imminent fight between specific students and failed to act; school personnel were warned of a specific threat and failed to act; or when a teacher was actually present for the assault and failed to act. *Frazer v. St. Tammany Parish School Bd.*, 99–2017 (La. App. 1 Cir. 12/22/00); *Bell v. Ayio, 97–534 (La. App. 1 Cir. 11/13/98), 731 So.2d 893; Wijngaarde v. Parents of Guy*, 97–2064 (La. App. 4 Cir. 9/2/98), 720 So.2d 6; *Vaughn v. Orleans Parish School Bd.*, 00–0556 (La. App. 4 Cir. 11/28/01) 802 So.2d 967. Foreseeability is also a factor, and schools are not responsible for fights that spontaneously break out. *Wallmuth*, 2001-1779, p. 9-10, 813 So. 2d at 347.

In *Wallmuth*, a student was beaten up by three students in the locker room following gym class. 2001-1779, p. 1, 813 So. 2d at 342. The school had received calls from parents complaining about fights and roughhousing frequently occurring in the locker room. *Id*. at, p. 4, 813 So. 2d at 344. Prior to the attack, the perpetrators yelled, in the presence of the coach, they would "get him after class." *Id*. at p. 2, 813 So. 2d at 343. Despite this threat, the locker room was unmonitored at the time of the attack. *Id*. The Louisiana Supreme Court reversed the trial court's judgment ruling that the school board was one hundred percent (100%) liable. Ultimately, the Supreme Court attributed no liability to the school board. *Id*. at p. 14, 813 So. 2d at 350. The Supreme Court reasoned that because the victim and coach believed the threat had passed, there was no reason to believe an altercation

would occur in the locker room. *Id*. at p. 13, 813 So. 2d at 350. Additionally, the court found there was no prior history of animosity or violence between the students involved in the altercation. *Id*. 2001-1779, p. 11-12, 813 So. 2d at 348-49. Furthermore, the court found the harm was "not foreseeable, nor constructively, or actually known." *Id*. at p. 13, 813 So. 2d at 350.

In applying the holding and reasoning of the *Wallmuth* decision to the instant case, we likewise find that the trial court correctly concluded that De La Salle did not voluntarily undertake an enhanced duty to supervise the locker room and correctly granted summary judgment in favor of De La Salle and Coach Manale.

In the instant case, Mrs. Dean testified, in her prior-recorded deposition, that she approached the school about better supervision in the eighth grade locker room; not the varsity locker room, where the incident at issue took place.[4] She testified that she had no knowledge of altercations or fights occurring in the varsity locker room.[5] Additionally, her deposition made no mention of the school promising to specifically look after her sons as stated in a later-executed affidavit that was provided in opposition to the motion for summary judgment[6]. Furthermore, when Roland gave a deposition in the instant matter, he unequivocally stated that he had not experienced any prior fights in the varsity locker room—neither as a participant, nor as a witness to any. He stated that he never expected the verbal exchange between Carter and him to become physical and there was no history of animosity or problems between the two of them.

---

[4] The altercation took place in the varsity locker room which was reserved for ninth graders and up.

[5] Wendy testified that her son, Cody reported having items stolen from the eighth-grade locker room and bullying in that locker room. She further testified that Cody reported there were no coaches monitoring the locker room.

[6] The affidavit will be examined later in this opinion.

In contravention of the deposition testimony of Mrs. Dean and Roland, Appellants' filed affidavits stated that the school was informed of the dangers in the unchaperoned locker room, and that the school promised to look out for Roland. At the hearing on the motion for summary judgment, counsel for Appellants spoke of the school's promise to monitor the locker room. Appellees countered that the school made a general promise to all families to provide the best educational environment, and this promise was not meant as a promise to look after one particular student. The trial court agreed with this interpretation of the "promise" and found a higher duty was not owed.

We find the trial court did not err in this conclusion because, as will be discussed *infra*, the affidavit offered by Appellants in support of the alleged individual promise was not sufficient evidence to create a genuine issue of material fact.

The Appellees in the current case, like in *Wallmuth*, were not informed of any specific imminent threat, or of a prior animus history between Roland and Carter.[7] The fight was a spontaneous, unforeseeable act that ended quickly. It is unreasonable to expect the school to constantly monitor the locker room. Moreover, the school did not take on a higher duty of surveillance. Thus, we find that this assignment of error is without merit.

2. *The trial court erred by making a credibility determination regarding the Appellants' sworn affidavits and requiring affidavits from disinterested witnesses*

Having determined Appellees did not have a heightened duty of supervision, this Court is tasked with now determining whether the trial court erred in making

---

[7] Both Roland and Mrs. Dean testified in their depositions that Carter and Roland did not have any prior altercations or events which would suggest Carter and Roland would get into a physical altercation.

an improper credibility determination regarding Appellants' sworn affidavits. Appellants assert the trial court erred by determining the affidavits submitted were self-serving and requesting affidavits from disinterested parties. Appellants explain that by dismissing their affidavits, the trial court made a credibility determination, which is not allowed at the summary judgment stage.

As a rule, the trial court cannot make credibility determinations on a motion for summary judgment. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181, p. 16 (La. 2/29/00), 755 So. 2d 226, 236; *Grant v. Am. Sugar Ref., Inc.*, 2006-1180, p. 3 (La. App. 4 Cir. 1/31/07), 952 So. 2d 746, 748. Affidavits may be sufficient to support a finding of a genuine issue of material fact as long as the party opposing summary judgment sets forth specific facts showing a genuine issue for trial. *Fortenberry v. Berthier*, 503 So. 2d 596, 598 (La. App. 4th Cir. 1987).

An affidavit may not be used to defeat summary judgment when it is "self-serving." *George v. Dover Elevator Co.*, 2002-0821, p. 4 (La. App. 4 Cir. 9/25/02), 828 So. 2d 1194, 1197. An affidavit is "self-serving" when: 1) it is inconsistent with previous sworn depositions—with no explanation for the inconsistencies; 2) is offered after the motion for summary judgment was filed; and 3) claims to create an issue of material fact. *Hardison v. Byrne*, 2015-0111, p. 9 (La. App. 4 Cir. 12/9/15), 182 So. 3d 1110, 1116; *George*, 828 So. 2d at 1197; *Douglas v. Hillhaven Rest Home, Inc.*, 97-0596 (La. App. 1 Cir. 4/8/98), 709 So. 2d 1079, 1083. Such affidavits are not considered by Louisiana courts in order to avoid the "thwarting of summary judgment procedure by the mere filing of an affidavit contradicting inconvenient statements found in previous deposition testimony when the mover has no opportunity to cross-examine the witness concerning the

inconsistencies and the trial court is prevented from weighing evidence by the rules of summary judgment." *George*, 828 So. 2d at 1197.

In the current case, the depositions of Roland and Mrs. Dean were taken on October 11, 2017. On February 10, 2021, more than two (2) years after the motion for summary judgment was filed and sixteen (16) days before the hearing on the motion for summary judgment, Appellants filed into the record three (3) affidavits from Roland, Mrs. Dean, and Cody Dean, Roland's brother. All three (3) affidavits described the locker room as a "hostile environment" using identical language.[8] Moreover, the affidavits of Cody and Roland attest to their alleged first-hand experience of altercations in the locker room.[9]

### *Roland's Deposition and Affidavit*

In his deposition, Roland explained that the coaches did not monitor the students as they performed activities but were near in case a student needed help. He explained that the coaches trusted the students to exercise as ordered. Roland confirmed that the head coach explained to the students that they were expected to take care of the locker room as a way of establishing trust between the players and the coaches.

Roland further testified during his deposition that he had not experienced prior fights in the locker room or seen other students fight with each other. Even as the confrontation began with Carter, Roland stated that he did not expect it would become physical. Roland explained that he did not know Carter before the altercation but was aware of him as a fellow student. He stated that they did not

---

[8] All three affidavits used the exact same language in describing the locker room, specifically stating, "It was often a hostile environment where they would be fighting, pushing, shoving, and cursing."

[9] Cody and Roland's affidavits both have an identical paragraph describing the locker room.

have a history of problems or animosity with each other. According to Roland, the altercation lasted for about ten (10) to twenty (20) seconds.

Roland's description of the locker room in his deposition is in stark contrast to the description offered in his affidavit. In the affidavit he described the locker room as:

> [A] hostile environment with fighting, pushing, shoving, and cursing consistently occurring. I would estimate that some variation of an altercation occurred in the locker room multiple times per week. Examples of these altercations looked like verbal altercations, physical contact - pushing, shoving, punching - small rough housing which often escalated into more aggressive physical contact. We often had to leave our belongings in the locker rooms unattended while we were at practice or games on/off campus. Lockers that locked were provided only to "starter" players. There was not enough locker space for all students and the rest of us were unable to use them, and therefore, many students had their belongings out in the open. As a result, personal items such as, jewelry, money, shoes, electronic devices, clothes, etc. were stolen often. When students reported the theft to the coaches the response was very passive. A general announcement would be made to the team stating, 'if anyone has [this item], please return it[.]' The coaches never supervised the locker room as they were always across the hall in their offices.

In addition to his drastic different characterization of the locker room, Roland stated the altercation in the locker room escalated "over time" rather than for the several seconds as described in his earlier deposition testimony. He changed the description of how he knew Carter and described Carter as having a reputation for altercations and trash talking. In his earlier deposition testimony, he stated that

12

he had known Carter just as a student and did not mention any reputation for causing trouble.[10]

Finally, in his affidavit, Roland stated that he personally heard the school disciplinarian promise to monitor the locker room more closely after an altercation in the eighth-grade locker room. However, Roland did not mention such a promise during his previous deposition.

### *Mrs. Dean's Deposition and Affidavit*

In her deposition, Mrs. Dean confirmed Roland and Carter did not have a history of animosity. She further stated she had never heard of Carter prior to the altercation.

When discussing the locker room, Mrs. Dean stated she had not heard of fights occurring in the varsity locker room. Mrs. Dean stated that she had previously spoken with the school disciplinarian about the lack of supervision in the eighth-grade locker room because her son, Cody's, uniform shoes were stolen from that locker room. She did not state any promises were made regarding supervising the locker room.

In her affidavit, Mrs. Dean used language identical to Roland's to describe the hostility in the locker room. This contrasted her prior deposition testimony in which she stated she had not heard of any conflicts within the locker room.

Mrs. Dean did report in her affidavit that she had spoken with the disciplinarian about the lack of supervision in the eighth-grade locker room; however, the reason stated in the deposition—the theft of her son's school shoes—

---

[10] In his deposition, Roland theorized that he was targeted because Carter was upset about things that happened during the practice.

was changed to an altercation Roland had with a different student. Additionally, Wendy added a detail that she was promised by the disciplinarian that he would personally monitor the locker room. She further reported the disciplinarian followed-up and confirmed hearing the students' use of bad language and he implied the students had off-colored conversations. As stated previously, this locker room was not the same locker room where Roland was punched.

The affidavits executed and offered in opposition to the summary judgment motion, in accordance with *Hardison*, are inconsistent with previous sworn deposition testimony given by Roland and Mrs. Dean; they were executed two years after the summary judgment motion was filed and they are the only basis used to create a genuine issue of material fact. Thus, we do not find that the trial court did made a credibility determination, but rather found the affidavits to be self-serving and filed with the intent of creating a material issue of fact to defeat summary judgement. Because the affidavits were deemed self-serving, the trial court did not err in declining to give the affidavits evidentiary weight. Therefore, we find Appellants' assignment of error to be without merit.

## CONCLUSION

Appellees did not agree to a higher duty of supervision of the locker room and were unaware of specific concerns within the locker room such that greater supervision was required. The affidavits submitted by Appellants inexplicably contradicted the prior depositions and were properly ruled as self-serving by the trial court. Because the self-serving affidavits were the only proffered evidence that a heightened duty of supervision was required, they were not sufficient to prove a genuine issue of material fact existed for trial. Thus, we conclude that trial court did not err in granting the motion for summary judgment.

For the forgoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**