GORBATY, Judge.
Jennifer Dupuy appeals a judgment in her favor on the basis that the award of $66,834 was insufficient to compensate for her damages. Defendants/appellees are Vaughan 0. Fitzpatrick and United Services Automobile Association (USAA). For the following reasons, we amend the award of general damages, and affirm as amended.
FACTS AND PROCEDURAL HISTORY:
On March 28, 1997, Jennifer Dupuy was a passenger in a vehicle being driven by her boyfriend. As the couple proceeded down Metairie Road in the left lane, another vehicle, being driven by Vaughan O. Fitzpatrick and insured by USAA, crossed their path from the right lane, and either stopped or slowed, causing the vehicle in which Jennifer was traveling to strike it from the rear. Jennifer testified that she struck her head on the windshield, and experienced immediate pain in her neck. She was transported to East Jefferson Hospital, where she complained of pain to the left side of her neck and shoulder. The emergency broom doctor diagnosed an acute cervical strain, prescribed pain medication and instructed her to see her private physician.
Ms. Dupuy testified that she saw Dr. Stewart Altman a few days after the accident. He referred her to physical therapy, which she claimed offered her no relief.[1]
On April 7, 1997, she saw Dr. Bernard Manale for the first time. Dr. Manale testified that Ms. Dupuy presented with pain in her neck, arms, mid and low back, and shoulder blades. She did not report any radiation of pain down her legs, nor any tingling, weakness or numbness of her limbs. The physical examination revealed a normal range of motion in her neck and back. She experienced spasm in her neck when leaning back. He diagnosed a cervical and lumbar sprain, and recommended physical therapy and anti-inflammatory medication.
*669 In October of 1997, an MRI revealed that Ms. Dupuy had a two to three millimeter posterior bulge at C 5-6. There was no evidence that the bulge was pressing on her spinal cord, or that there was nerve root impingement.
Ms. Dupuy became pregnant in April of 1998, and Dr. Manale discontinued all medications. During the pregnancy, she complained of weakness in her limbs. Dr. Manale testified that he could find no medical explanation for this complaint. After the baby was born in November of 1998, Ms. Dupuy continued to complain of neck pain. Dr. Manale testified that his physical examination revealed a normal 13range of motion in her neck and back, with no spasms. However, because of her continued complaints of pain, he again prescribed Vieodin and Soma.
Dr. Manale next saw Ms. Dupuy in March of 1999, and she again complained of weakness in her arms, particularly when lifting or carrying. He referred her to a neurologist, who performed an EMG and nerve conduction study. All results were normal. Because she continued to complain of weakness in her limbs, in June of 1999, Dr. Manale decided to place Ms. Dupuy on cortisone treatment.
One month prior to trial, Ms. Dupuy again underwent an MRI. It revealed no changes since the first MRI performed approximately seven months after the accident.
Dr. Manale testified that after 2% years of conservative treatment, his prognosis was that Ms. Dupuy would have good and bad days. He opined that the injury would speed up the aging process of her spine, and, conceivably, that Ms. Dupuy could begin to experience arthritis and bone spurs within the next ten years. When asked if the bulging cervical disc could be causing the alleged weakness in her limbs, Dr. Manale testified that he did not believe the bulge caused these symptoms because the disc was not pressing on her spine or nerve roots. He admitted that the only objective finding to explain Ms. Dupuy’s continued pain was the mid-line bulge at C 5-6.
Dr. Manale suggested to Ms. Dupuy that she consider having a discogram performed, a procedure in which needles are inserted into the discs and a chemical | ¿is injected. The patient, who is awake during the procedure, tells the doctor whether or not she feels severe pain. Dr. Manale testified that, based on Ms. Dupuy’s complaints, she would have a positive disco-gram at C 5-6. He also explained that thé discogram would indicate to a surgeon where a cervical fusion should be done.
Dr. Manale testified that a cervical fusion would cost approximately $20 to $30 thousand, and that Ms. Dupuy would require approximately three months to heal before returning to work as a waitress. He assigned a seven percent total body disability rating, regardless of whether or not she underwent surgery.
Following a jury trial, Ms. Dupuy was awarded $66,834.00. The jury verdict was made the judgment of the court. The record does not contain the judgment, jury interrogatories or a jury verdict form; however, Ms. Dupuy has attached a copy of the judgment and the verdict form to her brief. The form indicates that $30,000 of the award was for general damages, encompassing pain and suffering, disability, and past and future loss of enjoyment of life. An additional $36,834 was awarded for special damages including past and future medical expenses, lost income, and diminished earning capacity. There is no line item breakdown of each element of damage.
Ms. Dupuy filed a motion for new trial and for JNOV, which were denied by the *670 trial court following a hearing. This appeal followed.
DISCUSSION:
A. General damages:
In her first assignment of error, Ms. Dupuy claims that the jury erred by awarding an insufficient general damage award. Relying upon other appellate decisions involving similar injuries, she contends that the evidence of her pain and suffering, disability rating, and loss of enjoyment of life, particularly considering her age at the time of the accident, necessitate an increase in the general damage award.
The Supreme Court has delineated an appellate court’s function when a general damage award is challenged on appeal:
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
[[Image here]]
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994) (citations omitted) (emphasis added). In determining whether an abuse of discretion has been shown, the relevant | (¡evidence must be viewed in the light that offers the most support to the trial court’s judgment. Id. at 1261.
Applying these standards, we find that the trial court abused its discretion in awarding only $30,000 in general damages for Ms. Dupuy’s injuries. Dr. Manale testified that the bulging disc at C 5-6 could account for Ms. Dupuy’s continued complaints. He believed that her complaints were genuine, and did not think she was malingering. The conservative treatment rendered over the previous 2 years had not proven effective, thus making surgery Ms. Dupuy’s only option for relief. Dr. Manale did not necessarily recommend surgery, but stated that he would rather let nature take its course. He added that this “course” could last 5 to 10 years, with bouts of intermittent pain. Dr. Manale admitted that only Ms. Dupuy knew how bad the pain was, and how much she could tolerate. He explained that recovery from surgery could take 3 months.
In Doyle v. McKinney, 98-1102 (La. App. 4 Cir. 4/7/99), 732 So.2d 128, this Court affirmed a general damage award for a 17 year old plaintiff who suffered bulging lumbar discs as a result of an automobile accident. Mr. Doyle, who had participated in sports since childhood, did not have any previous back injuries, but, as a result of this accident, was assigned a five to ten percent anatomical disability of his back and a functional disability requiring him to restrain from strenuous activities for the rest of his life.
Applying the facts of Doyle to this case, and considering Ms. Dupuy’s young age, the physical nature of her work, the possibility of future surgery, and |7the seven percent disability assigned by Dr. Manale, we find that $45,000 is a more appropriate *671 award for general damages, and amend the judgment accordingly.
B. Special Damages:
This Court is unable to ascertain the particular elements of the special damages award. Ms. Dupuy contends that because she incurred $7,334.39 in past medicals, the remaining $29,499.61 must be for future medical expenses, loss of earnings and loss of earning capacity. Defendants do not dispute the amount of the past medicals, but do argue that the exact apportionment of the claimed losses is unknown.
It is well settled that a lump sum award is presumed to award all items of damages claimed. Bryan v. City of New Orleans, 98-1263, p. 2 (La.1/20/99), 737 So.2d 696, 697. An appellant’s burden of proving that a fact finder clearly abused its discretion is more difficult than usual because the intention tb award a specific amount for any particular item is not readily ascertainable. Id. at p. 3, 737 So.2d at 698. Because all parties agree that $30,000 of the lump sum award was for general damages, we must review the award of $36,834 for special damages.
In this case, we can fix past medical expenses at $7,334.39, leaving a balance of approximately $29,500. Ms. Dupuy calculates her lost earnings at $22,500, based on the following breakdown: Prior to the accident, she was employed as a hostess, working 6 nights per week, 6 hours per night, earning $6.50 per hour plus $20 per night in tips. She missed two weeks of work immediately following the accident for a total loss of $708. After the accident she was able to [swork only 4 nights per week until the end of 1997. This loss totaled $4,090. During and after her pregnancy, she was only able to work 3 nights per week. Through the date of trial, she thus sustained a loss of $7,641, for a total of $22,439 in lost wages.
Defendants agree that Ms. Dupuy lost $708 in wages for the two weeks immediately following the accident. They also recognize that Ms. Dupuy was promoted to waitress at some point after the accident and testified that she made approximately $90 per night. Based on her reduced work schedule, they calculate her lost earnings from two weeks after the accident until the time her baby was born to be $14,400. Defendants speculate that the jury could have believed Ms. Dupuy capable of working more frequently after her baby was born, and, therefore, merely doubled the actual lost income for the future lost income award. This total award of $29,508 thereby substantiates the jury’s award.
Our review of the testimony reveals that Ms. Dupuy testified that she never approached her employer about returning to working 6 days per week. She admitted that she liked working only four days per week. Therefore, we calculate her lost wages as follows:
Two weeks lost following accident at hostess pay: $ 708.00
Two nights per week lost post-accident/pre-pregnancy at waitress pay: 8,640.00
Three nights per week lost during pregnancy: 9,720.00
TOTAL: $19,068.00
1 nBecause Ms. Dupuy admitted that she had not attempted to return to work for 6 nights per week, and, in fact, liked her 4-day schedule, the jury could have declined to award her lost wages beyond the birth of her baby.
As to her future medicals, Ms. Dupuy contends that if financially able, she would have the discogram and cervical fusion about which Dr. Manale testified. However, Dr. Manale specifically stated that he did not recommend surgery for Ms. Du- *672 puy, but would prefer for her to let nature take its course. It is therefore plausible that the balance of the special damage award could have been for continued conservative medical treatment.
While we realize that our calculations are speculative (as are the appellant’s and appellees’), this is the problem a court must face when a lump sum award is made. To that end, we are unable to say that the special damages award represents an abuse of the trier of fact’s vast discretion. The award is not so low as to shock the conscience or offend right reason.
Accordingly, for the reasons set forth above, we amend the judgment to increase the general damage award, and affirm as amended.
AFFIRMED AS AMENDED.

. Although numerous references are made to Dr. Altman's testimony and medical records, the record does not contain Dr. Altman's testimony, and the medical records contained in the exhibits are for Ms. Dupuy’s boyfriend.