855 So.2d 393 (2003)
Lucien DORVILIER
v.
Peter GAGLIANO, et al.
No. 2002-CA-2765.
Court of Appeal of Louisiana, Fourth Circuit.
August 27, 2003.
*395 Stephen C. Hartel, Jr., Hartel & Kenny, PLC, Metairie, LA, for Plaintiff/Appellee.
John J. Lee, Jr., New Orleans, LA, for Defendant/Appellant, Leon Casadaban.
Mark J. Shea, Shea Law Offices, New Orleans, LA, for Defendant/Appellant, Peter Gagliano.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD).
TERRI F. LOVE, Judge.
This case arises out of a fistic encounter wherein the trial court held the defendants, Peter Gagliano ("Gagliano") and Leon Casadaban ("Casadaban") equally at fault for Lucien Dorvilier's ("Dorvilier") injuries. The trial court also awarded Dorvilier $29,244.00 in general damages together with costs and interest in addition to entering judgment in favor of the intervenor, Charity Hospital, in the amount of $4,062.78 together with the costs and interest. Each defendant was ordered to bear his share of the costs. Gagliano appeals the trial court's judgment and we affirm for the following reasons:

FACTS AND PROCEDURAL HISTORY
On January 25, 1997, Super Bowl weekend, the defendants, Gagliano and Casadaban hailed a taxicab driven by Dorvilier. Gagliano and Casadaban agreed with Dorvilier that a flat fee would be paid to deliver them from the French Quarter to Metairie. While en route to Metairie, Dorvilier attempted to raise the cab fare from twenty-five dollars to thirty dollars. Gagliano and Casadaban began arguing with Dorvilier about the increased cost of the trip. From this point, the parties tell two different versions of events. Dorvilier testified that Gagliano and Casadaban were intoxicated when he picked them up at St. Peter and Dauphine in the French Quarter. Further, Dorvilier testified that the argument started when he asked Gagliano to stop smoking in the taxi and Gagliano refused to do so. Dorvilier also claimed that Gagliano hit the back of the driver's seat and used racial epithets in response to his request that Gagliano stop smoking in the taxi.
Dorvilier stated that he turned the taxi around and headed back towards New Orleans. Dorvilier stopped at the intersection of Johnson and Canal, and Gagliano and Casadaban exited the taxicab. Dorvilier claims that Casadaban dragged him out of the vehicle and beat him, which caused him to lose two teeth. Dorvilier testified that both Gagliano and Casadaban hit him. Dorvilier also denied that he had a weapon in his taxi at the time of the incident. Dorvilier testified that once he brought Gagliano and Casadaban back to the French Quarter, he told them they did not have to pay and asked them to exit the vehicle. Gagliano denied using racial epithets and hitting the back of the driver's seat. He also testified that once he and Casadaban exited the taxi, Dorvilier also exited the taxi, and began a verbal argument with the two patrons. Gagliano further testified that Dorvilier was the aggressor. According to Gagliano, Dorvilier hit Casadaban in the face and knocked him down. Casadaban defended himself by hitting Dorvilier. Then, Dorvilier attempted to re-enter the taxi and reach for something under the seat. At this point, Gagliano testified that both he and Casadaban felt Dorvilier was going to retrieve a weapon from the taxi. Therefore, Gagliano and Casadaban began to yell for someone to call the police, and they held Dorvilier at bay until the police arrived. After the altercation between Dorvilier and Casadaban, Dorvilier sought medical treatment at the Medical Center of Louisiana at New *396 Orleans. Jerry McClain ("McClain") witnessed the altercation and he testified that he did not see Dorvilier hit either Gagliano or Casadaban. McClain testified that he saw both of the defendants pull Dorvilier out of the taxi and begin to attack him. McClain also testified that he smelled alcohol emanating from each of the defendant's breath. Dr. Michael Rouhana testified regarding Dorvilier's injuries and the resulting medical bills for treatment of the dental injuries, which stemmed from the loss of two teeth.
At trial, the court found that despite inconsistent testimony from the parties and the witnesses "it is uncontradicted that a physical battery ensued and that the plaintiff sustained injuries as a result." In accordance with this finding, the trial court entered judgment in favor of Dorvilier and against Gagliano and Casadaban in the amount of $29,244.00 together with cost and interest with each defendant to bear his share of the costs. The court also entered a judgment in favor of Charity Hospital and Medical Center of Louisiana at New Orleans and against Gagliano and Casadaban in the amount of $4,062.78 together with cost and interest.

ASSIGNMENT OF ERROR ONE
In Gagliano's first assignment of error, he argues the trial court erred in finding liable and assessing fault to him for Dorvilier's injuries.
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840 (La.1989). Thus, when there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review although the appellate court may feel that its own evaluations and inferences are as reasonable. La. C.C. art. 2315 states that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
Gagliano argues that the trial judge failed to ascertain whether Gagliano and/or Casadaban were responsible for the injuries sustained by Dorvilier. The trial judge stated in her written reasons for judgment, in pertinent part:
While the testimony varies from witness to witness as to what perpetuated the incidents made the subject of this lawsuit, it is un contradicted that a physical battery ensued and that the plaintiff sustained injuries as a result. This Court also finds that the defendants became angry, exited the vehicle and upon exiting the vehicle became engaged in a fight. For above reasons this Court finds that the defendants, Peter Gagliano and Leon Casadaban, committed a battery against plaintiff, Lucien Dorvilier, and is liable for the damages sustained by plaintiff resulting from said battery.
The record reflects the first officer on the scene, Eduardo Colmenero, an eyewitness, McClain, and Lucien Dorvilier provided testimony to support the trial court's finding both defendants liable and at fault for the damages Dorvilier sustained as a result of a fistic encounter.

*397 TESTIMONY OF OFFICER EDUARDO COLMENERO
Officer Colmenero testified that he was dispatched to the scene of the incident at approximately 4:30 in the morning. The officer testified as follows:
Q. In the interest of brevity, I'd like First off, I'd like to ask you who were the parties involved in the incident?
A. According to the report, Leon Casadaban, Peter Gagliano, and Lucien Dorvilier.
Q. And what did your investigation entail?
A. Well, just by reading the report, there was a fight that occurred over a taxi fare. Allegedly, Mr. Gagliano and Casadaban fought with the cab driver. During the fight, the cab driver lost some teeth. They were all cited during the incident.
Officer Colmenero also testified that he made a notation in his report regarding Gagliano and Casadaban appearing to be under the influence of alcohol at the time of the incident; however, he stated that he did not cite the defendants for public intoxication. The officer further testified that there was report of a weapon at the scene of the altercation.

TESTIMONY OF JERRY MCCLAIN
McClain, a passerby, testified to the following order of events:
Q. And you saw these gentlemen get out of the cab, correct?
A. Yes, sir.
Q. And what happened when they got out of the cab?
A. They struck the cab driver, fighting the cab driver.
Q. So, the cab driver was already out of the car, too?
A. They grabbed him out the car. He wasn't going to let him pull off.
Q. So, your testimony is they jumped out the back seat, ran around their front door, and pulled him out of the front seat, hit the guy in the mouth and bust all the guy's mouth. And the other guy came around and hit him, too.
A. Right around the front door. The cab door right here, the cab driver right here. They pulled open the cab driver's door. The guy right there took and hit the guy in the mouth and bust all the guy's mouth. And the other guy came around and hit him, too.
McClain further testified that he did not see Dorvilier swing at either of the defendants and he arrived at the scene of the incident before the police.

TESTIMONY OF GAGLIANO
Gagliano testified to a completely different set of circumstances leading up to the altercation. Specifically, when questioned about the events on the day in question, he stated:
Q. What occurred when the taxi eventually came to a stop?
A. He got out the car. I got out the passenger's side. Me and Leon were getting out. He got out the car, ran toward the back of the car, and started yelling at us.
Q. So, a verbal altercation or argument ensued?
A. Yes.
Q. Did you at any time pull Mr. Dorvilier out the cab?
A. No, not at all.
Q. What was the argument in reference to on the scene?

*398 A. Why he wouldn't let us out the car.
Gagliano further testified that Dorvilier swung at Casadaban first and knocked Casadaban's glasses off of his face. After knocking Casadaban down, Gagliano testified that he saw Dorvilier return to the cab and they were afraid that Dorvilier was going to retrieve a weapon. Gagliano also stated that the police arrived at the scene before the witness, Jerry McClain. Therefore, the situation was already under control by the time McClain arrived there. Gagliano did testify that both him and Casadaban restrained Dorvilier to keep him from leaving the scene of the incident or retrieving a weapon, but he denied physically striking Dorvilier.
Even though Renetta Dorvilier's testimony did corroborate her husband's statement that he usually keeps a weapon in the taxi for his protection, we find no evidence to support the presence of any weapon in Dorvilier's taxi at the time of the altercation, particularly in light of the absence of any such notation in Officer Colmenero's report.

TESTIMONY OF LEON CASADABAN
Casadaban testified that he exited the cab once he felt the argument between Dorvilier and Gagliano had become a little too heated. He further testified that once he approached them, Dorvilier punched him in the face. After Casadaban regained his composure, he testified that he stated:
I punched We kind of held each other trying to punch each other. Then he pushed me off of him and ran to his cab and he was looking under the front seat of his cab. At this point I'm thinking, oh gee, this guy is liable to have some kind of weapon or something on him. So, I ran over there and grabbed him and put my arms around him like in a bear hug, so to speak, and started yelling to call the police.
When questioned about the events that led up to the fistic encounter, Dorvilier stated:
Q. And what happened when you arrived at the corner of Canal Street and North Johnson?
A. Okay. I told them, now you can get out. You not have to pay. That's when one of them grabbed me, he struck me. He struck me.
Q. Wait. You got out of the cab at that place or not? Did you get out of the cab there?
A. I'm just wait there. Then one pulled me out exactly. He one pulled me out first.
Q. Now, did you take any punches yourself at these two gentlemen?
A. I don't hit them. I try to get away from them because two of them try to beat me up. Two of them. Not one. One try to get away, another one hold me. I try to get away. I didn't even throw no punch because when two people, don't fight, try to get away. They hold me up.
Q. At any point during this incident did you attempt to fire weapon?
A. No, I didn't have no weapon with me, no.
Q. And why did you not want to engage with these men?
A. Because two of them. You cannot fight with two. You cannot fight with two. When you see two people fight, the best thing to do is try to get away.
Upon review of the testimony contained in the record, this court finds no evidence of manifest error in the trial court's credibility findings of Dorvilier's testimony. *399 Accordingly, we must give great deference to the weight afforded to the witnesses' testimony by the trial court.
Gagliano further asserts that he struck Dorvilier in self-defense and therefore, cannot be held liable for the injuries Dorvilier sustained as a result of the fistic encounter. The use of force or violence for self-defense is governed by La. R.S. 14:19, which states:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
In State v. Woods, 2000-2712, p. 10 (La.App. 4 Cir. 5/29/02), 828 So.2d 6, 15, this court stated that "in the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary."
In the instant case, the eyewitness testimony given by Dorvilier and McClain, who had no interest in the case, described the defendants' attack upon the victim as unprovoked. The only evidence offered to show that the defendant acted in self-defense was the self-serving testimony of Gagliano and Casadaban. Both of the defendant's testified that Dorvilier initiated the attack. Furthermore, there was sufficient evidence provided at trial to substantiate the extent of Dorvilier's injuries; however, neither Gagliano nor Casadaban presented evidence, which showed that they were injured during the fistic encounter with Dorvilier, and therefore would help to substantiate there claim of self defense.
The record establishes that Dorvilier has proved beyond a reasonable doubt that the force or violence used by Gagliano was not reasonable, and also was not apparently necessary. Dorvilier presented the direct evidence of Officer Colmenero, Ms. Dorvilier, McClain, and Dr. Rouhana to substantiate his injuries as a result of the altercation with Gagliano and Casadaban. McClain testified that Dorvilier did not initiate the encounter. McClain's testimony was also corroborated by the police report, which noted that Casadaban and Gagliano were not hurt and that the defendants did not advise the officer that they were hurt. On the other hand, Dorvilier was noticeably injured and this fact was noted in Officer Colmenero's police report. Neither Gagliano nor Casadaban presented any direct evidence that either of them acted in self-defense during the altercation. The trial court apparently found the plaintiff's witnesses credible and rejected the defendant's claim of self-defense. We find no error in the trial court's decision to find the plaintiff's witnesses' testimony more credible than the defendant's testimony in this case.

ASSIGNMENT OF ERRORS THREE, FOUR, AND FIVE
Assignment of errors three, four and five deal with affirmative defenses asserted by the appellant, Gagliano. Therefore, we will address the defenses together. Gagliano contends the trial judge erred in failing to assess a percentage of fault to Dorvilier under the comparative fault theory or assumption of the risk theory.
When assessing the fault of all the parties involved, this court relies on factors set out in Wijngaarde v. Parents of Kenya Guy, 1997-2064, p. 5 (La.App. 4 *400 Cir. 9/12/98), 720 So.2d 6, (citing, Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985)), which states:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
The court in Wijngaarde went on further to state:
[the negligent tortfeasor] who by definition acted unreasonably under the circumstances in breaching their duty to plaintiff, should not be allowed to benefit at the innocent plaintiff's expense by an allocation of fault to the intentional tortfeasor under comparative fault principles. Given the fact that any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor, application of comparative fault principles in the circumstances presented in this particular case would operate to reduce the incentive of the lessor to protect against the same type of situation occurring again in the future. Such a result is clearly contrary to public policy.
In the instant case, we find that Dorvilier reacted to hostile customers by returning them to the location where they hailed the taxi. According to Dorvilier's testimony, his actions were in accordance with his company protocol. Furthermore, the eyewitness, McClain, testified that he saw Gagliano and Casadaban pull Dorvilier out of the taxi and attack him. As a matter of fact, Dorvilier was the only person involved in the altercation who sustained an injury. A review of the record does not support Gagliano's contention that Dorvilier was the aggressor in this situation. Equally important, the trial court ruled that Gagliano and Casadaban committed an intentional tort, a battery, against Dorvilier. Therefore, we find that to allocate a percentage of fault to Dorvilier in this case not only contrary to the evidence presented at trial, but also contrary to public policy. Consequently, neither comparative fault nor assumption of the risk is applicable to the instant case.

ASSIGNMENT OF ERROR SIX
In his sixth assignment of error, Gagliano argues the lump sum award is for general damages and is excessive. This argument has no merit.
The trial court has great discretion in the assessment of damages. An appellate court should increase or decrease an award only when the amount is beyond that which a reasonable trier fact could assess for the effects of the particular injury upon the particular plaintiff under the circumstances of the case. La.C.C. art.1999; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied., 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
A lump sum judgment is presumed to award all items of damages claimed, and appellant's burden of proving an abuse of discretion is more difficult because the intent to award a specific amount for a particular item is not readily ascertainable. Bryan v. City of New Orleans, XXXX-XXXX, p. 12 (La.1/20/99), 737 So.2d 696, 697. See also Dupuy v. Fitzpatrick, *401 XXXX-XXXX, p. 12 (La.App. 4 Cir. 5/23/01), 789 So.2d 667, 671.
The trial court awarded a lump-sum judgment in the amount of $29,244.00 in favor of Dorvilier. The portion of the award attributable to special damages includes $11,607.78 (medicals), $600.00 (expert's fee), and $1,020.00 (lost earnings), totaling $13,227.78, with leaves $16,017.78 in general damages.
The trial court has much discretion in assessing general damages, and an appellate court should not modify the award unless it is beyond that which a reasonable trier of fact could assess for a particular injury to the particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied., 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only if the appellate court finds an abuse of discretion may it examine prior awards of general damages to determine the amount the trier of fact reasonably could award. Theriot v. Allstate Insurance Co., 625 So.2d 1337, 1340 (La.1993); Matthews v. Ferrer, 95-0266 (La.App. 4 cir. 11/30/95), 665 So.2d 1211. We find no abuse in this case.
The trial court entered judgment against Gagliano and Casadaban in the amount of $29,244.00 together with cost and interests with each defendant bearing his share of the cost. The trial court also entered judgment in favor of the intervenor, Charity Hospital and Medical Center of Louisiana at New Orleans, and against the defendants in the amount of $4,062.78 together with costs and interests. In the instant case, Dorvilier is a forty-five year old taxi driver. His treating dentist, Dr. Rouhana, testified that Dorvilier sought treatment for the loss of two lower anterior teeth and damage to his upper teeth. Dr. Rouhana also testified that the loss of the two teeth necessitated fitting Dorvilier with a temporary lower partial denture at a cost of approximately eight hundred and forty-five dollars. The placement of the inexpensive temporary partial requires periodic replacement due to wear and tear of the teeth. A more permanent solution such as implants can cost anywhere from five to six thousand dollars to replace two teeth.
Dr. Rouhana further testified that Dorvilier's future medicals will run anywhere from six thousand dollars for implants and crowns for the loss of the lower anterior teeth to approximately seventeen hundred dollars for the damage to the upper teeth in addition to a root canal at a cost of about seven hundred dollars. Dr. Rouhana testified that the loss of the lower anterior teeth and damage to the upper teeth was related the altercation at issue before this court, and the emergency room physician's notes entered into evidence at trial corroborated Dr. Rouhana's testimony. Due to the medical testimony provided by Dr. Rouhana and the medical records from Charity Hospital, we do not find an abuse of discretion in the trial court's general damage award.
With regards to the lost earnings portion of the damage award, it is the plaintiff's burden to prove past lost wages and time missed from work due to the injury. Stark v. National Tea Co., 94-2633 (La.App. 4 Cir. 5/16/95), 655 So.2d 769, 775. Past lost wages are susceptible of mathematical calculation, and the award is not subject to the much discretion rule. Stark, 655 So.2d at 775; Daigle v. U.S. Fidelity and Guar. Ins. Co., 655 So.2d 431, 441 (La.App. 1 Cir.1995).
In the instant case, Dorvilier testified that he missed two weeks of work. He further testified that he made on average eighty dollars a night. However, during special events, such as the Super Bowl, *402 Dorvilier testified that he would make two hundred dollars a night. Hence, the amount of lost earnings equaled one thousand and twenty dollars over a two-week period. Additionally, Dorvilier also testified that he was required to maintain trip sheets, which detailed the number of fares and how much each customer paid for each shift. We do not find an abuse of discretion in the calculation of lost earnings.

ASSIGNMENT OF ERROR SEVEN
Gagliano argues that the trial court erred in not allowing the defendants more leeway in questioning Dorvilier about his inconsistent statements regarding prior arrests. This argument has no merit.
At trial, Dorvilier responded to this line of questioning in the following manner:
Q. (Court): When does he say, yes, I have been arrested.
A. (Defense): In his deposition he said he had two previous arrests.
Q. (Defense): This is the actual arrest to discredit him, Your Honor. In fact, he was arrested 
Q. (Defense): Mr. Dorvilier, do you remember making a deposition in your lawyer's office on February 19, 2002?
A. In my lawyer office?
Q. Yes. Do you remember that day when you were present and Mr. Hartel was present?
A. Yes.
Q. And us four gentlemen were present?
A. Yes.
Q. And do you remember when Mr. Lee asked you a question: Have you ever been arrested before? And you indicated that you had been arrested on two previous occasions.
A. I told you I been arrested. But, you know, sir, then he not ask me how many times I been arrested. And I say I never been arrested for criminal, drug, stealing, nothing like that, sir, since I been in United States.
Q. (Plaintiff): Your Honor, I think he's now satisfied with what the attorney was trying to show. There was an inconsistent statement, which he clarified in his deposition.
A. (Court): But you can't go any further. You make your point. He gave two different statements. You can't go any further on that issue.
Based on the record, we find the trial court granted sufficient latitude to the defense during cross-examination. As a result, it was noted that Dorvilier's prior inconsistent statement regarding prior arrests, which was given in an answer to an interrogatory, had been clarified in a subsequent deposition. We find no merit in this argument.
Accordingly, this court finds that the trial court did not err in its assessment of the credibility of the witnesses' testimony nor did the trial court err in its allocation of fault of the parties and amount of damages awarded to Dorvilier. Therefore, we affirm the trial court's findings.
AFFIRMED.